NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250534-U

NO. 4-25-0534

IN THE APPELLATE COURT

FILED
June 17, 2026
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| JOHN W. RUCKER, | ) | No. 23CF685 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Christopher R. Doscotch, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed, concluding defendant's sentence was not excessive
        and the trial court properly weighed the mitigating and aggravating factors at
        sentencing.

¶ 2     Following a jury trial, defendant, John W. Rucker, was found guilty of being an
armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2022)), armed violence (*id.*
§ 33A-2(a)), unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)), unlawful possession of
a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2022)), aggravated
driving under the influence (DUI) (625 ILCS 5/11-501(d)(l)(A) (West 2022)), and driving while
his license was revoked (*id.* § 6-303(a)). The trial court sentenced defendant to concurrent terms
of 15, 20, 10, 14, 7, and 4 years in prison, respectively.

¶ 3     On appeal, defendant argues his sentence is excessive. Specifically, defendant
claims the trial court failed to give sufficient weight to the pertinent mitigating evidence, which

included his lack of recent serious criminal history. Further, defendant contends his sentences do not reflect an appropriate balancing of rehabilitation and retribution, as is constitutionally required. See Ill. Const. 1970, art. I, § 11. The State responds the court properly weighed the mitigating and aggravating factors and did not impose an excessive sentence.

¶ 4 We conclude the trial court properly balanced the factors in mitigation and aggravation and defendant's sentences are not excessive. Accordingly, we affirm the court's judgment.

¶ 5 I. BACKGROUND

¶ 6 A. Charges and Jury Trial

¶ 7 In October 2023, a grand jury returned a bill of indictment charging defendant with the following: AHC, a Class X felony (720 ILCS 5/24-1.7(a) (West 2022)) (count I); armed violence, a Class X felony (*id.* § 33A-2(a)) (count II); unlawful possession of a controlled substance with intent to deliver, a Class 1 felony (720 ILCS 570/401(c)(2) (West 2022)) (count III); unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)) (count IV); aggravated DUI, a Class 2 felony (625 ILCS 5/11-501(d)(1)(A) (West 2022)) (count V); aggravated DUI while his license was revoked, a Class 4 felony (*id.* § 11-501(a)) (count VI); driving while his license was revoked, a Class 4 felony (*id.* § 6-303(a)) (count VII); leaving the scene of a motor vehicle accident involving damage to the vehicle, a Class A misdemeanor (*id.* § 11-402(a)) (count VIII); and reckless driving, a Class A misdemeanor (*id.* § 11-503(a)(1)) (count IX). The charges stemmed from an incident wherein the State alleged the following in a probable cause affidavit:

"I, Cassandra Mullikin, am an Assistant State's Attorney for Tazewell County, Illinois. I have reviewed the police reports regarding the investigation of

and would state the following:

On September 24, 2023[,] at approximately 1:38 a.m., Officer Jeffrey Bieber of the East Peoria Police Department was dispatched to the area of Bloomington Rd. and Kerfoot in East Peoria, Illinois within Tazewell County in regard to a vehicle accident. Officer Bieber met with Samantha S[.] at a nearby residence on Kerfoot. Smith stated that she was driving [with Patience M.] on Meadow Ave. when a red Chevy Equinox began following her very closely. Smith stated that she turned into a gravel parking lot at Bloomington Rd. and Kerfoot to allow the Equinox to pass her. Smith stated that the Equinox then swerved into the parking lot as well, stopped, backed up, and then accelerated towards her vehicle, ramming into the driver's side of her vehicle. Officer Bieber observed extensive damage to the driver's side of [her] vehicle. [Samantha S.] stated the driver of the vehicle was a black male, but was unable to provide any other description.

At approximately 1:51 a.m., dispatch received a call regarding a red Equinox driving recklessly in the area of Pinecrest and I-74. Officers located the Equinox, which had extensive front end damage, and initiated a stop. The driver was identified as [defendant]. [Defendant's] driver's license was revoked and he showed signs of impairment due to intoxication. He was placed under arrest and searched. Officers located a clear baggie, containing 12 individual baggies with a white rocky substance, which field tested positive for crack cocaine, in [defendant]'s left pants pocket. Officers also searched the vehicle and located under the front passenger seat, wrapped in a towel, was a Ruger Super Redhawk .44 magnum revolver with 6 bullets in the chamber. Dispatch informed that the firearm

had been reported stolen out of Woodford County.

Court records indicate that [defendant] was previously convicted of Home Invasion, a forcible felony, in Peoria County case [No.] 01-CF-1247, and Unlawful Possession of a Weapon by a Felon, in Cook County case [No.] 08-CR-85120."

¶ 8 In April 2024, defendant filed a motion to suppress evidence. Defendant argued the firearm recovered from his vehicle in this case should be suppressed where the officers lacked probable cause or a warrant to search his vehicle and the firearm was not in plain view. At a hearing on the motion to suppress, defendant's wife testified that both she and defendant owned, had possession of, and drove the car. She also testified she knew there was a gun in the car that night, which was wrapped in a towel under the passenger seat. Officer Jeffrey Bieber of the East Peoria Police Department testified he responded to the scene of a hit-and-run accident and then later located defendant standing outside his damaged vehicle. Officer Bieber testified defendant smelled of alcohol and also had a revoked license, so he placed him under arrest. Officers then conducted a search of defendant's person and found a bag containing 12 individually wrapped baggies containing a substance they suspected to be crack cocaine. Officers later searched defendant's vehicle and found a firearm under the front passenger seat. The trial court denied the motion to suppress, concluding the search was lawful as both a search incident to defendant's arrest and as an inventory search where defendant's vehicle had to be towed.

¶ 9 The trial court conducted a jury trial in September and October 2024. Before the start of trial, the State moved to dismiss counts VI, VIII, and IX, which the court allowed. At trial, the State presented testimony from Samantha S.; Patience M.; Officers Adam Rossi, Nicholas Swise, Adam Chittick, and Jeffrey Bieber of the East Peoria Police Department; and Deputy Daniel Greving with the Tazewell County Sheriff's Office. The State's evidence admitted at trial

substantially tracked with the facts contained in the probable cause affidavit previously filed by the assistant state's attorney. At the close of the State's evidence, defendant moved for acquittal on counts I, II, and IV, which the court denied. Defendant did not present any evidence. At the conclusion of trial, the jury found defendant guilty on counts I, II, III, IV, V, and VII.

¶ 10                                B. Posttrial Proceedings and Sentencing

¶ 11        In October 2024, defendant *pro se* filed a motion for a new trial, or alternatively, judgment notwithstanding the verdict. Subsequently, defense counsel filed a motion for new trial, arguing, *inter alia*, the State failed to prove defendant guilty beyond a reasonable doubt and the trial court erred in denying the motion to suppress evidence. Following a hearing, the court denied defendant's motion.

¶ 12        At the sentencing hearing, the State emphasized defendant's actions in this case threatened serious bodily harm to both Samantha S. and Patience M. The State further argued defendant had a significant criminal history, which included convictions for home invasion, unlawful possession of a weapon by a felon, 3 felonies involving controlled substances, and 21 traffic offenses. Moreover, longer sentences were necessary in this case to deter defendant from continuing to commit crimes. Based on the nature and seriousness of the offenses, the State recommended sentences of 30 years in prison for counts I, II, and III, respectively. The State deferred to the court on counts IV and VII in light of its other recommendations.

¶ 13        In mitigation, defendant submitted a letter from Ketra Wallace, a certified alcohol and drug counselor at the Tazewell County Justice Center (TCJC), which was admitted into evidence with no objection. In the letter, Wallace reported defendant had participated in weekly substance abuse education classes while incarcerated at TCJC since February 2024. According to Wallace, defendant completed every assignment given "with thought and effort." In her opinion,

defendant "has put in a lot of effort into learning and using the skills he has been taught in class in order to better himself and his life." Wallace also shared a quoted excerpt from one of defendant's assignments, wherein defendant reflects on what he learned in the program.

¶ 14 Defendant argued in mitigation that despite the State's assertions regarding his criminal history, the predicate felonies supporting his AHC conviction were not recent. Additionally, there was no evidence that defendant fired or otherwise used the firearm he possessed. Furthermore, defendant had a serious drug addiction, which precipitated his commission of the offenses in this case. Finally, counsel argued no one was seriously injured over the course of the incident. In defendant's statement in allocution, he continued to deny possession of the firearm but emphasized his employment and that he supported his children.

¶ 15 Following arguments, the trial court stated as follows:

"The Court's considering the presentence investigation report, the evidence presented, statement in allocution, arguments of counsel, all statutory and nonstatutory factors in aggravation and mitigation whether specifically mentioned or not, history and character of the Defendant, having due regard for the seriousness of the offense with the objective of restoring the defendant to useful citizenship.

* * *

I don't find any specific factor in mitigation to be overriding. There is some factors in mitigation though with [defense counsel's] argument about the time frame with [defendant's] most serious felony being in 2008 and being a significant time earlier and having a longer period of time without any type of, quote, unquote, violent crime.

One can argue drug addiction. It is a medical condition, and it can be a

- 6 -

mitigating factor. It can be an aggravating factor. Sometimes it could have elements of both.

You clearly have had lifelong addiction issues; however—and the letter from Ms. Wallace is not just that you went through the program, but indicates you put some thought, time, and effort into that; okay? So I understand that.

In aggravation, did it cause or threaten serious harm? The actions or events that whole day did because this wasn't just a DUI where you get pulled over. When I read how this occurred and considering the testimony and looking here in the [presentence investigation report], [defendant] was following [Samantha S. and Patience M].

And I know he indicates they weren't—what I can understand in his statement not telling the truth, but following them and hit their car so that's not even—just even an accident. That's even beyond an accident.

So I do think caused or threatened serious harm is a factor, and I think that's a significant factor on how that—how that DUI and damage and how this all came about.

There's many ways you can have a DUI, and one of them isn't accelerating and ramming into someone's vehicle and then leaving the scene.

Criminal history, I am not considering the pending charge and arrest because it's not a conviction yet and I don't have any external testimony for that cross-examination by [defense counsel]; however, there's two previous DUIs which that is a factor that cannot be considered in the DUI sentence, but it can be considered in the other sentencings.

To my best counting here, there's nine driving while license revoked or suspended. Not the crimes of the century, but—and [the State] makes the point that he doesn't take them seriously, but at some point, there are rules to be followed, and I think in one of your evaluations you said driving is very important to you.

***

Your previous criminal history, there's varying degrees [defense counsel] argued of felonies. A manufacturing from '99, controlled substance possession in '99, manufacturing in '99, Class 2, 4 felonies.

Then you had the home invasion in 2001 which is 23 years ago and duly noted, and then a felony for possession of a weapon in '08, but then another possession again here in 2024.

So I looked again at how this incident occurred, and this just isn't a standard case, and your drug use threatened serious harm to the people. Thankfully, they were not physically injured.

And I think the number of driving while license revoked while they're not the most serious speaks to your history and character in regards to your ability and willingness to follow the law.

While these are non-probationable, you look at your potential for rehabilitation and you look at Ms. Wallace's record and that looks good, but I do want to point out a couple of other things.

You've had the substance abuse issues for a long time. They are medical conditions, but they are conditions which people can seek treatment and help themselves.

It's not like having cancer, and, you know, because you went through 75 hours of treatment and even did [cognitive behavioral therapy] and other things for the last DUI in 2018, and one thing that was troubling about that is it doesn't look like you applied anything.

You know, the way it looks like to me with completing that in '19, then you get another driving on a revoked in '21, and then we have this case from '23 that you didn't apply anything that you learned in there.

And then look at what was going on, *** when you're asked about your history of use, you say alcohol and marijuana. That is on your [International Classification of Diseases] which is your diagnoses.

Severe cannabis disorder. Moderate alcohol. Second DUI, but then you've been using cocaine daily since you were 27 so for the last 16 years when you did that—all that treatment on probation for DUI treatment, not one note did I see in there where you talked at all about your cocaine addiction at all. Nothing.

I looked for that word and did not find it on one page in there so—and I'm addressing arguments, and it sounds extremely harsh, but I'm gonna address those issues because [both parties] brought it up, and that's the evidence we have here so that's what makes it hard when you get a letter here that you're taking it seriously.

* * *

There is some basis to the period of time that you did not have any serious felonies, and the most serious one [occurred] at least 23 years [ago]."

After explaining the factors it considered, the court imposed the following prison sentences, to be served concurrently: 15 years for AHC, 20 years for armed violence, 14 years for possession of a

controlled substance with intent to deliver, 10 years for unlawful use of a weapon by a felon, 7 years for aggravated DUI, and 4 years for driving while his license was revoked.

¶ 16    Initially, defense counsel filed a notice of appeal on December 6, 2024. However, several weeks later, defendant *pro se* filed a motion to reconsider his sentence. The trial court appointed new counsel to represent defendant, who filed a new motion to reconsider defendant's sentence in May 2025. In the motion, counsel argued defendant's sentence was excessive and the State improperly argued at sentencing that defendant had a pending DUI. Following a hearing, the court denied the motion. At the hearing, the court explained that at sentencing, it did not consider any pending charges, took all proper aggravating and mitigating factors into account, and imposed sentences closer to the lower end of the applicable statutory sentencing ranges.

¶ 17    This appeal followed.

¶ 18                                  II. ANALYSIS

¶ 19    On appeal, defendant argues his sentence is excessive and requests this court remand for a new sentencing hearing or reduce his sentence. Specifically, defendant argues (1) the trial court did not give sufficient weight to the pertinent mitigating evidence, including his lack of recent serious criminal history and (2) the sentence does not reflect an appropriate balancing of rehabilitation and retribution as constitutionally required. The State responds the court properly weighed the mitigating and aggravating factors and defendant's sentence was not excessive. We affirm.

¶ 20    Under the Illinois Constitution, "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "The trial court's sentence must be based upon the particular circumstances of the case, including (1) the defendant's history, character, and

rehabilitative potential; (2) the seriousness of the offense; (3) the need to protect society; and (4) the need for punishment and deterrence." *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 102. In selecting an appropriate sentence following a criminal conviction, the trial court has broad discretionary powers. *People v. Garcia*, 2018 IL App (4th) 170339, ¶ 37. Generally, "[a] sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Fern*, 189 Ill. 2d 48, 54 (1999). Accordingly, this court will not disturb a sentence within the statutory range absent an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000).

¶ 21        The Unified Code of Corrections (730 ILCS 5/1-1-1 *et seq.* (West 2024)) sets forth mitigating and aggravating factors the trial court must consider in fashioning its sentence. *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 54. Statutory factors in aggravation include, *inter alia*: (1) "the defendant's conduct caused or threatened serious harm"; (2) "the defendant has a history of prior delinquency or criminal activity"; and (3) "the sentence is necessary to deter others from committing the same crime." *Id.* §§ 5-5-3.2(a)(1), (3), (7). The court may consider in mitigation whether "[t]he defendant *** is the parent of a child or infant whose well-being will be negatively affected by the parent's absence." *Id.* § 5-5-3.1(a)(18). Furthermore, "drug addiction is not a *per se* mitigating factor." *Sturgeon*, 2019 IL App (4th) 170035, ¶ 108. "Instead, the trial court *may* view drug addiction as an aggravating factor, if it is so inclined." (Emphasis in original.) *Id.*

¶ 22        Here, defendant does not claim any of his individual sentences exceed the statutory maximum for the respective offense. Instead, he argues his 15-year sentence for AHC, which will be the longest when served at 85%, is so manifestly disproportionate to the nature of the offense when considering the relevant aggravating and mitigating factors that it constitutes an abuse of

discretion by the trial court. We conclude defendant's concurrent sentences are not excessive and no abuse of discretion occurred.

¶ 23 First, we acknowledge defendant's allegation his 15-year sentence for AHC is "more than twice the minimum sentence for [AHC]" is technically correct. Because AHC is a Class X felony, the sentencing range for the offense is between 6 and 30 years in prison. 730 ILCS 5/5-4.5-25(a) (West 2024). However, as the State points out, defendant's sentence is also in the lower half of the sentencing range for the offense.

¶ 24 We next consider defendant's claim the trial court failed to give adequate weight to the letter from Wallace regarding his participation in drug treatment at TCJC. Here, the court acknowledged that drug addiction can be both mitigating and aggravating. It further found Wallace's letter indicated defendant "put some thought, time, and effort" into his drug treatment at TCJC, which it found relevant to defendant's potential for rehabilitation. However, the court also emphasized that while drug addiction is an illness, it is an illness for which individuals can seek treatment and help themselves recover. Defendant had previously completed 75 hours of drug treatment following his last DUI in 2018. Defendant never mentioned cocaine during these many hours of treatment but now claimed in this case to have been addicted to cocaine for over a decade. The court was concerned that despite defendant's previous drug treatment, it did not appear he had applied that knowledge given his conduct leading to the charges in this case. We conclude these facts were also relevant to defendant's potential for rehabilitation, and the court gave adequate weight to Wallace's letter considering this history.

¶ 25 Defendant also claims the trial court should not have considered any impact of the incident on Samantha S. and Patience M. with respect to the AHC conviction because "[t]his offense has nothing to do with threatening or causing harm to the victims of an automobile

accident." Assuming, *arguendo*, defendant is correct, we find no evidence in the record the court considered the threat of harm factor with respect to defendant's AHC conviction specifically. When read in context, the court only mentioned the threat of harm as an aggravating factor with respect to defendant's conviction for aggravated DUI. The court emphasized, "There's many ways you can have a DUI, and one of them isn't accelerating and ramming into someone's vehicle and then leaving the scene." The court correctly determined defendant's actions in committing the aggravated DUI threatened serious harm to Samantha S. and Patience M. Moreover, despite the fact defendant did not use the firearm during the commission of these offenses, the court was permitted to consider the threat of harm from the aggravated DUI as it pertained to the nature and circumstances surrounding his commission of AHC.

¶ 26    Defendant next argues the trial court erroneously punished him for refusing to take responsibility for the firearm found in his vehicle during his statement in allocution. We agree with defendant that the court may not impose a more severe sentence merely because a defendant claims he is innocent at the time of sentencing. *People v. Sherman*, 52 Ill. App. 3d 857, 859 (1977). However, the record in this case does not show the court imposed a more severe sentence for AHC based on defendant's claim he did not possess the firearm found in his vehicle. Here, defendant claimed in his statement in allocution that his wife testified she owned the firearm at the motion to suppress hearing. The court corrected defendant's assertion, noting his wife never testified she owned the firearm. Instead, his wife merely stated she knew where the gun was kept in the vehicle, which she shared with defendant. The court found defendant's denial was "tricky" and emphasized he was entitled to maintain his innocence. Specifically, the court stated, "[T]here's no way for me to know what happened for me to say oh, I'm just gonna hammer you because you're not accepting any responsibility for it if you are maintaining that type of innocence." This statement suggests the

court affirmatively refrained from considering defendant's claim of innocence as aggravating. The court permissibly acknowledged a jury found him guilty and expressed its opinion that the evidence was overwhelming. We conclude the court's comments do not rise to the level of imposing a more serious sentence based on defendant's innocence claim.

¶ 27 Defendant further contends the trial court did not give adequate weight to the fact "his only violent offenses occurred in 2001 and 2008" and most of his criminal history consisted of mere traffic offenses. We disagree. The court agreed the more "serious" felonies in defendant's criminal history were not recent. However, the court was nonetheless permitted to consider defendant's overall lengthy criminal history as it related to his character and potential for rehabilitation. Moreover, the court specifically indicated it was considering the plethora of non-DUI traffic offenses as aggravating criminal history as it pertained to his convictions for aggravated DUI and driving while his license was revoked. Additionally, the court was also permitted to consider defendant's previous drug-related offenses as aggravating criminal history with respect to his conviction for possession of a controlled substance with intent to deliver in this case. We conclude the court adequately considered defendant's relevant criminal history as it pertained to the individual offenses in this case and balanced that against the fact the more serious offenses therein did not occur recently.

¶ 28 Finally, we also conclude the trial court considered and gave adequate weight to the other relevant mitigating factors. The court acknowledged defendant's employment and his desire to support his 15-year-old child. However, given the minimum penalties for the offenses in this case, the court reasoned defendant's child would necessarily reach the age of majority while defendant was incarcerated. The court believed defendant had made progress in his drug treatment program but was rightly skeptical of defendant's commitment considering his criminal history.

While defendant's criminal history mostly consisted of minor traffic offenses, of which there were more than 20, the court permissibly concluded that history was relevant to defendant's overall ability and willingness to follow the law.

¶ 29 In sum, the trial court in this case went to great lengths to explain its reasoning for its sentencing decision with respect to all the statutory and nonstatutory aggravating and mitigating factors. Even more impressively, the court carefully indicated at which points it would *not* be considering certain factors where it was aware those factors were inherent to the respective offense. For instance, the court mentioned it was not considering defendant's previous DUI with respect to his conviction for aggravated DUI in this case but would consider it with respect to defendant's other convictions. The court also stated it was not considering defendant's predicate AHC felonies when fashioning its sentence for that conviction. Defendant's conviction for AHC was on the lower end within the statutory range for the offense, and we find nothing in the record showing his 15-year sentence was greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature and seriousness of the offense. As noted above, the circumstances surrounding defendant's conviction for AHC—*i.e.*, possession of cocaine, defendant's intoxication, the vehicle collision, leaving the scene, and driving while his license was revoked—were particularly aggravating, despite the fact he did not use the firearm. Accordingly, we conclude no abuse of discretion occurred and affirm the trial court's judgment.

¶ 30 III. CONCLUSION

¶ 31 For the reasons stated, we affirm the trial court's judgment.

¶ 32 Affirmed.